Freeman, J".,
delivered the opinion of the court.
This bill was filed in November, 1869, to test the validity of the acts of the mayor and other officers of the city of Nashville, and to avoid a large amount of liabilities created by them against the city corporation. The mayor was A. E. Alden, the obligations were issued by him and his associate officer, the recorder of the corporation, purporting to he liabilities of the municipal corporation, which these officers represented as official agents. Without going into a detail statement of the allegations of the bill, it suffices to say that it claimed, first, that Alden and his associates in the city government for the two' years preceding the filing of the bill, were neither officers de jure nor de facto of the corporation, so as to make their acts obligatory on that body. Second, that even admitting that they were such officers as might, in a proper case, bind the corporation, so as to make their acts obligatory on that body, still many of the transactions sought to be impeached were illegal, and not binding on the corporation, even if done by officers de jure, and that the corporation is entitled to be relieved against them.
The particular cases involved in the present appeal are as to certain judgments obtained before magistrates, and most, if not all, stayed, a.t request of the obnoxious mayor or Iris associates. These judgments are founded on what is known as corporation checks or orders drawn by the recorder, W. Mills, countersigned by the mayor, on the treasurer of the city, and then indorsed by the treas *349 urer, as is shown, to indicate they had been presented to him, and the date of such presentation, from and after which date, if was understood they were to bear interest. In other words, it amounted to an acceptance of the order, to be paid in the future. These orders were in form as the following, which may be used as a sample of the others:
Nashville, Eeb. 4, 1869.
Treasurer of the corporation of Nashvile, pay to Julius Sax, or bearer, five hundred dollars on account of bills payable.
A. E. ALDEN, Mayor. W. MILLS, Recorder.
These checks, it seems, were issued and used by these officers to sue for the purpose of raising money, as claimed for corporation purposes, and were disposed of to money dealers or pledged as collateral security to such parties, the mayor and recorder executing their notes for an amount of money received by them. A contract was signed at the same time, authorizing the- holders to sell or collect at the expense of the makers, these checks, either in the city of Nashville, or elsewhere, at public or private sale, at his option, on the non-performance of the promise to pay or non-payment, of the note. The holder ivas also allowed by this contract, in case of public sale, to purchase these securities, without being liable, to account for more than the net proceeds of such sale. With this brief statement of facts, we proceed to a discussion of the questions presented in argument, at any rate, such as are deemed material to the settlement of the ease before us. On the first question — that is, whether these officers were officers de facto, that is, officers in fact (whether de jure or in law or not, we need not decide) — we have no doubt, and hold they ■certainly were such officers, and so far as the general public are concerned, their acts, within the limits of the powers belonging to their offices, must be held valid. They were *350 actually in office, and exercising all the functions of such offices.
While their election and installation into office under the circumstances presented in this record, was a sad commentary upon the workings of our republican institutions in times of excited party passion, yet being so in office, the public duties appertaining to these offices being performed by them, the people are not required to look further, or perform the judicial function of settling to any extent the legality and validty of their claim. In fact, to require the general public to apply the test so generally insisted on, that the officer is in office by color of right, is to submit a question to the public, which may well somewhat puzzle the trained judicial mind, to1 say the least of it, when the question of what color of right is, is attempted to be clearly defined from the cases and reasonings on this subject in our books. The principles of the validity of the acts of officers de facto is one based on a sound public policy, in order to avoid the consequences of such a requirement from the public. What may be the correct principle in a case where there are two officers, and each having the insignia of office, holding themselves out to the public as ready to perform the functions of the place or places claimed (if any such case can occur), we need not now decide. Suffice it to say, no such case is presented in this record. A mere claim of some other party, however well founded, though it be in process of enforcement through the agency of the courts, cannot make such a ease. The legal tribunal, and not the public, must settle such a question. The acts of the officer in possession claiming the right, must, as to- the public, be held valid.
The next question presented is, whether the judgments rendered in this case are, or are not, conclusive on the rights-of the parties? If these judgments are conclusive not having been appealed from, then' we need go no further, as no- *351 relief would be granted on matters touching the original liability while judgments stood in force based on such liability. The matter would be res adjudicata.
It is insisted that these judgments are void for want of jurisdiction in the justice of the peace to render them, all of them except two- being rendered on cheeks of larger amount than $250.
By sec. 4123, sub-see. 1, of the Code,' jurisdiction of justices “extends to” five hundred dollars [now one thousand dollars. See Shannon’s Code, see. 5935], upon all notes of hand indiscriminately, whether calling for dollars and cents simply, or for an amount to be discharged in other means than money .... and upon indorsements of negotiable paper where demand and notice are expressly waived in the indorsement. By sub-section 2, it is given on all unsettled accounts, obligations, contracts, or other evidences of debt, not embraced in the preceding sub-section, when the amount claimed does not exceed two hundred and fifty dollars [now five hundred dollars]. If the justice had jurisdiction, it must be held that these corporation checks-, or orders over $250, are notes of hand, in the sense of the statute, otherwise the jurisdiction would be under the last sub-section quoted, only $250, as on contracts o-r other evidences of debt not embraced in the preceding sub-section. It is maintained on the one hand that these checks are notes of hand or promissory notes; on the other that they are not, but checks or orders.
This court in [Whiteman v. Childress], 6 Hum., 304, adopts the definition of Mr. Story, in his work on Promissory Notes [ch. 1, secs. 1, 17], as strictly accurate, which is, “A promissory note may be defined to be a written engagement by one person to pay another person therein named, absolutely and unconditionally, a sum of money certain, at a time specified therein,” and so held a note payable “in current bank notes,” not to be a promissory note, *352 or negotiable, and so are numerous other decisions familiar to the profession.
This definition has been held in our state to apply to- due bills and like papers, as implying fairly an absolute undertaking to- pay the sum named in money. See cases in note to T. & S. Code, sec. 1956 [notes under see. 3506 of Shannon’s Code]. Our act of 1762, chap. 9, and sec. 2, copied from statute of Anne, 3 & 4, ch. 9, sec. 1, Code, sec. 1956, is: “Every note whereby the maker promises to pay money to any other person or order, or to- the order of any person, shall be deemed negotiable in the same manner as inland bills of exchange by tbe custom of merchants.” It would seem from these authorities that these papers certainly are not in form promissory notes, nor are they in substance such instruments. They are not, nor do they fairly import, an absolute or unconditional or direct promise to pay money on tbe part of the maker or tbe corporation, to the payee. They are but orders from two- of the officers of the corporation on a third officer, the treasurer, to pay money to the bearer or payee. They might well be held “evidences of debt” under the second sub-section o-f the Code referred to, and be the basis of a recovery, if a legal liability ivas authorized to be created against the corporation by such officers, but they do- not have the character of promissory notes or notes of hand. It is true, in the case of Powers v. Nahm, 7 Heis., 583, this court held an acceptance by Powers of a paper in the following form, as included in our statute: “Thirty days after date, pay to the order of myself $300, va-lue received.” This was held an absolute and unconditional promise to pay tire debt according to tlie terms of tbe paper, and in effect a promissory note.
This paper, however, is quite a different paper from the checks or orders now under consideration. "We think, in this case, the law was extended fully as far as it will admit of, to say the least of it. We think in order to make a *353 promissory note or note of hand under these statutes, there must be words amounting, on a fair construction, to a promise to pay, and this is the principle of our cases, as well as many others found in the books. See Story Prom. Notes, sec. 14; Pars, on B. & N., vol. 1st, p. 23, 24. The jurisdiction depending entirely by the Code on the character of the instrument, if it is such an instrument as the magistrate had no- jurisdiction of, then he had no- power to render the judgments. It is not a question of a collateral attack on a judgment or a decree, but is a question as to- whether the court- had jurisdiction of the subject-matter of the suit, not whether the court drew correct conclusions from the evidence. But we have to look at the instrument on which the suit is brought in order to see whether the court had jurisdiction of the subject-matter of the suit at all. In this view we think the question of jurisdiction is fairly open to inquiry on bill filed to enjoin a judgment for want of jurisdiction, or to disregard the judgment as void, and inquire into- the original liability. It is well settled you may look into the question of jurisdiction of the person on bill filed alleging want of service of process, -and the judgment may be declared void on proof of want of service, because of want of jurisdiction of the person. When either the fact is shown of want of jurisdiction of person or subject-matter, the judgment is void. This is not in conflict with the cases holding that on certiorari and supersedeas., in the nature of audita querela, you cannot, by proof, show the judgment of the magistrate is vo-id for want of jurisdiction on motion to quash the judgment and execution. A court of equity may declare a judgment void for want of jurisdiction of the subject-matter or person, and this necessarily involves an investigation of the fact on which the jurisdiction rests, and by our statute in these cases it is made to depend on the character of the paper. This fact must be looked to for this purpose.
*354 These judgments not being conclusive, bat void for want of jurisdiction of the subject-matter, we proceed to the next inquiry, whether these orders or checks can be enforced as legal liabilities against the corporation, of Nashville. This depends on tire view we may take of two questions. First, as to whether the officers who signed these papers were authorized by virtue of their official character to issue such paper, and thereby create a liability on the corporation— that is, tO' issue! floating “evidences of debt” in the form of orders, or checks, as they are called, for the purpose of raising money for the ordinary expenses of the corporation.
Second, as to what is the position of these holders, as innocent holders, in due course of trade,, as they claim, without actual notice of any wrong in the action of the officers. We remark that the right and even duty to issue such orders to parties as a means for payment of legally contracted obligations or debts, such as wages of laborers, may well be conceded in this investigation. Where the liability is one legally contracted, such orders on the treasury axe, perhaps, not only the usual means adopted for directing the custodian of the funds of the corporation, the treasurer, to pay the amount, and are to' him evidence that the debt has been audited by the properly authorized officers of the body, and serve as vouchers tO' him for his disbursements. But this- is a very different question from the one before us, when it is shown that these orders were merely issued to be used for borrowing money, generally used as collaterals by way of securing notes given by the officers for the money loaned, and were purchased in the market by money lenders.. The question is, whether any such authority to issue such paper for such purposes is to be found in the powers of a municipal corporation, unless specifically granted in the charter, or whether such powers can fairly be implied as necessary to the exercise of their granted powers, or, perhaps, it may be more clearly stated, as whether a party holding such paper as now before us, *355 holds it free from all inquiry as to whether the officers issuing had authority to issue it or not, and can recover on it, as an innocent holder of the paper could recover on it, if it were a common promissory note, or bill-of exchange, purchased in due course of trade. On this latter question we have been referred to a large mass of decisions of the courts of our sister states, and of the supreme court of the United States. These decisions are many of them contrary the one to the other, many of them in reference to the powers to be implied in corporations not municipal, but for trade or manufacturing purposes. We do not deem it proper to' refer to them here in detail, nor critically review them in order to- deduce the real principle settled by each. It is proper to say, however, that as decisions of courts of our sister states, while they 'are to be looked to as showing the current of judicial thought and opinion upon this question, and in this aspect are of persuasive authority of what the law is, they are not controlling,, nor can they be so held. In fact, it would be impossible for this court to undertake to ascertain the law of any particular case, by the process of settling what had been decided on the question, and what had been held by the courts of about thirty-eight states, many of them irreconcilable in their theories and principles. In such cases, we look to the decisions of other courts for the purpose of seeing the principles announced and the reasonings presented, and if the reasons are deemed soundly based on settled principles and legal analogies, we adopt them; when contradictory, we can but adopt that which, on reason and on authority, commends itself to our judgment as the fair deduction of right reason and sound legal analogy as applied to the question in hand. We may say, in addition, that on this question if we are simply to be controlled by a count of authorities, it may fairly be conceded that the number of decisions would be in favor of the proposition that a municipal corporation as such, no prohibition being found in the charter, had the power *356 to issue negotiable paper, subject to all the incidents of negotiability, belonging to ordinary commercial paper in the hands of an innocent holder. But as we have intimated, we cannot decide this case in view of this fact: Upon careful examination of the charter of the city of Nashville, it is clear that no such authority is granted to the corporate authorities in express terms. The most ample power of taxation is given, and this is necessarily the fairly assumed means granted for raising revenue. The question must then depend upon what implied powers are to be found.as necessary to the enjoyment and full exercise of the granted powers conferred by the charter, and whether the power to issue paper with all the incidents of negotiable commercial paper is to be found within the range of such implied powers.
In the language of a majority of the supreme court of the United States, in a case involving a portion of these orders (The Mayor [Nashville] v. Ray, 19 Wall. R., 415, 22 L. ad., 168): “A municipal corporation is a subordinate branch of the domestic government of a state. It is instituted for public purposes only; and has none of the peculiar qualities and characteristics of a trading corporation, instituted for purposes of gain, except that of acting in a corporate capacity. Its objects, its responsibilities, and its powers are different. As a local governmental institution,. it exists for the benefit of the people within its corporate limits. The legislature invests it with such powers as it deems adequate to the ends to be accomplished.”
We add, that it must look to its charter' alone for its powers, and can justly exercise none that axe not granted, or fairly to be implied, as necessary means to the enjoyment and free exercise of such granted powers; that the very nature of such corporations, being governmental in their objects and purposes, excludes the idea that they shall ■either engage in trade, or do, of necessity, as a means of enjoyment of powers granted for such governmental purpose, *357 | acts that] require the exercise of-any of the powers of a trading corporation, or the use of such agencies as commercial paper to carry out the powers conferred on them, or’ incident to the nature of such institutions. See opinoin of Shaw, Ch. J., in Spaulding v. Lowell, 23 Pick. R., 71; Dillon’s Mun. Corp., 173 [See 3d ed., secs. 117-138, 484-507].
Commercial paper, with the incidents by law attaching to such paper, grows out of the wants and necessities of commerce, but local governmental institutions as such have no connection with trade or commerce, therefore no necessity for its peculiar facilities and agencies. The nature of the two things are entirely diverse; in fact, as opposite in their character as can well be conceived. Cooley Cons. Limt., 211. We hold the principle to be sound, as stated by supreme court of New'Jersey (Schumm v. Seymour, 24 N. J. Eq. R., 153), that the powers of a municipal corporation can only be exercised by the governing legislative body of such corporation, or, we may add, by other agents of such corporation, in pursuance of authority given from such governing body in the form of an ordinance or legislative enactment of such body, or in pursuance of powers granted or conferred in the charter by the legislature. [This language is quoted and approved in Nashvile v. Toney, 10 Lea, 651-2.] In the language of Mr. Cooley, Const. Limt., 204 [6th ed., 248], another and very important limitation which rests upon municipal powers is, that they shall be executed by the "municipality itself, or by such agencies or officers as the statute has pointed out. So far as its functions are legislative, they rest in the discretion and judgment of the municipal body intrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates, or of any other authority. [Whyte v. Nashville], 2 Swan, 370, 371.
■ It is claimed, however, by the holders in this case, that the paper was signed by the mayor and treasurer of the *358 city, together with the recorder; that they were officers of the city government, and being innocent holders, they can recover, whether there was any special authority for the issue of the paper or not.
"Without citing at length the particular cases referred to or examined on this question, we state the principle which we hold to govern this case, as the result of our investigation. We hold that the officers of the corporation are but the agents of the corporate body. That the powers of such agents are defined by the charter, and the laws and ordinances passed by the legislative body of such corporation in pursuance of the powers granted in the charter or act of incorporation, or in the exercise of such implied powers as are necessary to the proper enjoyment and full exercise of the granted powers.
That the powers of these officers and agents being granted by public law, or given by ordinance in pursuance of such law, are equally open to the inspection of -all persons dealing with such agents, and where there is no authority in the charter, nor any given by ordinance in pursuance of the same, to issue the paper, or make the particular contract and bind the corporation, that such want of authority may be shown as a, defense to such paper in the hands of any party holding it. In other words, he cannot he an innocent holder so as to enforce the liability against the corporation, where no power existed in the office to create the liability on the corporate body. That the defense of ultra vires may always be made in such cases, and if want of power appears, may he successfully maintained.
See Dillon on Municipal Corporations, vol. 1st, 493 [see secs. 484-507 of 3d ed.], for principle and review of authorities; Clark v. Des Moines, 19 Iowa R., 206, also* and authorities cited; also numerous authorities cited in the briefs of Cooper and B. McP. Smith, pro and con on this question. [See their briefs in Nashville v. Ray, 19 Wall., 468-L. ed., 22: 164.]
*359 It is proper to add here that on the face of the paper it is to be charged to account of bills payable, thus indicating it to be an account of debts created by these officers, by the issue of what they call “bills payable/’ and not in payment of bona fide liabilities or debts of the corporation incurred in the administration of its affairs. This ought to have called the attention of the purchaser at once to the question of authority to issue o-r create such liabilities.
We think the above the only sound rule that can be adopted in view of the nature of these corporate bodies, and the security of the rights of the corporation or inhabitants represented by them. If they may issue paper creating liabilities enforceable at law, at their own will, then there is no need practically of adhering to the rule, or asserting it, that the powers of a corporate body are to be found in its charter. A violation of that charter, or exercise of powers not granted is equally as effective as conformity to it. The mere fact that the paper is signed by corporate officers cannot be equivalent to power to. bind the corporation. If such be the case it would be to sanctify the wrong, simply by the fact of its perpetration and would be to create or recognize a power, whether granted or not, alone by the fact of its having been exercised. Wo cannot assent tq. the soundness of this view. That the exercise of such power is not only not necessary to the performance of the functions of a municipal corporation, but as all experience, especially of late years, has demonstrated, is one of the most dangerous tendency. Corporation officers have but to issue paper creating a liability on the corporation, pass it to their friends, or to the money dealer, eager for profit, at any rate of discount agreed on, and the people who. pay the taxes must respond to. the liability, and their earnings be appropriated to its discharge. They can have no check on the creation of such liability because thousands or hundreds of thousands, as in this ease, may be issued and negotiated, and hardly attract the attention of the *360 parties to be affected before negotiated, and so* oppressive debts created for purposes, corrupt it may be, or to serve selfish ends, or for personal aggrandizement, with no authority of law to sustain them. No such power can be implied as incident to the simple exercise, of corporate authority in a municipality. We are aware of the various cases in the supreme court of the United States on this question, pushing the liability of municipal and other corporation to the. farthest verge of the law. But we do not think they fairly contravene the view we have taken. The true distinction, expressed or fairly to be deduced from even these cases is, that if the power exists, mere irregularities, however gross in the steps taken preparatory to their issue, will not vitiate the obligation in the hands of an innocent holder. We do not think any of these cases fairly construed goes to. the extent of holding the corporation liable when there was a total absence of power to create the liability. We hold, therefore, that this paper was issued without authority by the corporate officers, and is not binding on the corporation in the hands of even purchasers for value before due, even if such was the case, which may well be doubted from the facts in this record.
We hold, however, that the parties are entitled to recover from the corporation so much of the money received as they can show went to the legitimate uses of the corporate body, after it was received by the officers. If the money received was applied to legitimate corporate purposes, to that extent it paid debts or served purposes for which the funds of the corporation would have to have been appropriated; having been thus, applied, the corporation having received its benefits, must account to this extent. A decree will be drawn in accordance with this opinion. The costs of this court paid by defendants.