FeeemaN, J.,
delivered the opinion of the Court.
After disposing of several questions, he said: The question whether the judge who tried this case was authorized to act as such, is presented for decision, and as there have been a number of such appointments as this, by an election by members of the Bar, and doubt is entertained as to the validity of such elections or appointments, it is proper to examine the provisions of the Constitution on this subject, and construe them, that the question may be settled.
It appears from the record in this case, that, on the first day of the term, Hon. James I). Porter, the judge of the circuit, being absent, the clerk of the court, after having ascertained the sense of the Bar present, in pursuance of an Act of the Legislature, entitled “An Act to provide for the appointment of Special Judges in certain cases, passed July 7th, 1870,” proceeded to hold an election for a judge to preside and adjudicate cases until the arrival of the regular judge of said judicial circuit. At this election by members of the Bar, Hon. Isaac B. Hawkins was chosen Special Judge, took *162 tbe oath of office as prescribed in said act, and entered upon the duties of tbe office. The trial of tbe prisoner was bad before him, without objection made to his competency or his right to hold said court.
It is now insisted, however, as the facts are shown in the record, that this election was unauthorized by the Constitution, and the trial and conviction are nullities, not being by a court or under the direction of a judge of the State of Tennessee.
The question of the constitutionality of this act of the Legislature is not free from difficulty by any means.
The act of the Legislature authorizes an election by members of the Bar in cases where the “Judges of any court of record (other than the Supreme Court) fail to attend, or, if in attendance, can not properly preside in a cause or causes pending in such court."
The clause of the Constitution under which this Act of the' Legislature was passed, is Section 11 of Art. 6? and provides: “No Judge of the Supreme or inferior courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity, or affinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior court, except by consent of parties. In case all or any of the Judges of the Supreme Court shall be disqualified from presiding in the trial of any cause or causes, the Court, or the Judges thereof, shall certify the same to the Governor of the State, who shall forthwith commission the requisite number of men of law knowledge for the *163 trial and determination thereof.” It then provides: “The Legislature may, by general laws, make provision that special . judges may be appointed to hold any court, the judge of which shall be unable or fail to attend or sit; or hear any cause in which the judge may be incompetent.”
It will be seen, that in case of the judges of the Supreme Court, the Constitution itself provides for the Governor’s commissioning men to try and determine the cases in which they are incompetent. But in case of a judge of an inferior court, the Legislature is left to make provision that special judges may be appointed to hold any court. It is not a provision for filling a vacancy, but goes upon the assumption that the office itself is filled by the regular incumbent, who fails to attend and sit, or is incompetent to try any cause on the docket.
After looking carefully into the various provisions of the Constitution bearing on the question, we conclude that the Constitution did not intend to authorize the filling of an office, but only to allow the Legislature to provide for the temporary appointment of some one to “hold any court” when the judge failed to attend and sit, or was incompetent; and that the mode of such appointment is within the discretion of the Legislature. We can see no objection to making this appointment by the members of the Bar. It no more contravenes the “principle” of universal suffrage and election of all officers by the people, as insisted by counsel, than would an act of the Legislature which *164 should provide for the appointment of a person to hold the court, by the Governor.
The members of the Bar are interested in selecting the best man for the place, and certainly are better qualified to judge of the fitness of the party who may be selected by them, than the Governor of the State, who may know nothing on the subject.
We hold, therefore, there is nothing in this objection.
It is urged that the penalties imposed by this Act of Legislature, under which defendant stands indicted, are obnoxious to the charge of violating the Bill of Bights, 16th Section, Article 1st, of the Constitution, providing that “cruel and unusual punishments shall not be inflicted.” We may say, the punishment here is neither -cruel nor unusual. “Fine and imprisonment in the .county jail” for the misdemeanor, and for the felony, in the ,-second Section, “imprisonment in the penitentiary for a long period, ten to twenty years,” but this is neither cruel nor unusual, in the sense of the Constitution. When we look at the evils intended to be checked, and offenses forbidden by this act, and turn to the proof in this case, and see - the character of acts shown to have been committed by some one, we feel no hesitancy in saying, that- whenever parties shall be regularly convicted after a fair and impartial trial, in accordance with the forms of law, of such offenses, we shall feel no hesitancy in enforcing sternly the penalties provided by the statute.
Every home in this State is entitled to be protected from intrusion and outrage, whether it be the manT *165 sion of the wealthy or the hovel of the poorest man in the land.
Note. — The ease was reversed on other points. [Reporter.
It should be the pride and boast of every citizen to make the law so effective in its protective power, that we may be able to say of our country, as Canning said of the peasant homes of England, “that the winds and rains may enter them, but, without the warrant of the law, the King dare not do it.” We can only attain this desirable end by punishing promptly and severely all who shall dare, in violation of law, to intrude upon the sanctities of that place in which no forbidden or uninvited foot should ever be permitted to tread.