MENGEL BOX COMPANY *v.* W. A. FOWLKES *et al.*

(*Jackson.* April Term, 1916.)

1. **STATUTES. Construction. Title of act.**
Priv. Acts 1915, chapter 186, entitled "An act to establish a levee and drainage district . . . and for the purpose of draining and the reclamation of the wet and swamp lands, . . . and prescribe the method of doing so, and providing for the assessment and collection of the cost and expense of such improvment, and the manner of obtaining the means and funds therefor," is violative of Constitution article 2, section 17, providing that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title, in that section 4 of the act provides that a court composed of the chairman or judges of the county courts of the counties within the district shall sit once each month for the purpose of hearing and determining such questions as may be necessary to be passed upon under the act; it creating a new and independent court. (*Post, pp.* 203-206.)

Acts cited and construed: Acts 1915, ch. 186.

Constitution cited and construed: Art. 2, sec. 17.

2. **COURTS. Definition.**
A court is an instrumentality of soverignty, the repository of its judicial power, with authority to adjudge as to the rights of person or property between adversaries; the presence of judges being necessary as an essential element. (*Post, pp.* 206, 207.)

Case cited and distinguished: Railroad v. Crider, 91 Tenn., 489.

---

FROM DYER

---

Appeal from the Chancery Court of Dyer County.— COLIN P. McKINNEY, Chancellor.

S. G. LATTA, for appellants.

RANDOLPH & RANDOLPH and ASHLEY & CAMPBELL, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by the Mengel Box Company to. enjoin action under what is claimed to be a void act of the legislature (Private Acts 1915, chapter 186), which action, it is alleged, will be detrimental to its interests as a large landowner.

The legislature at its last session passed a bill creating the Dyer levee and drainage district for the purpose of authorizing the building of a levee and the draining, on the assessment plan, of a territory of about 200,000 acres lying along the Mississippi river, and extending from a point near Reelfoot Lake down to the mouth of Obion river.

The act names three directors to proceed to establish the district and bring about an execution of the design. They began to do so, giving notice to the landowners in the district as the act provides; whereupon the bill of complaint was filed. A demurer to it was overruled by the chancellor, who permitted an appeal to be prosecuted.

The principal attack made on the constitutionality of the act is based on those sections which make provision for a court adjudication of property rights, assessments, etc. It is urged by complainant com-

pany that there was not adopted by the legislature any existing court or judicial machinery for this purpose, but that an effort was made to create a new and special tribunal for the trial of all matters concerning the district and involved in dispute, and that the legislative bill therefore embraced more than one subject, that the creation of such a new tribunal was not set out in caption, and that the bill was not constitutionally passed because of a violation of ar-- ticle 2, section 17, of the Constitution.

Counsel of the defendants concede, as. he must, that if a new court is so provided for, the act must fall for the reason just stated.

The caption of the bill is in the following language:

"An act to establish a levee and drainage district to be known as the Dyer levee and drainage district, within the following boundaries, to wit: (Here reciting them)—for the purpose of erecting a levee from the high ground south of Tiptonville, Tennessee, to the mouth of the Obion river, and for the purpose of draining and the reclamation of the wet and swamp lands within such boundaries, and prescribe the method of doing so, and providing for the assessment and collection of the cost and expense of such improvement, and the manner of obtaining the means and funds therefor."

Section 4 of the act is in the following language:

"That at the time and place fixed by the said board of directors in the said publication, a court composed of the chairman or judges of the county courts of the

counties of Dyer, Lake and Obion shall sit for the purpose of hearing the objections of any person or persons who may file the same. The said court so composed of said chairman or judges of the said counties or any two of them shall sit on the second Tuesday of each month in the courthouse at Dyersburg, Tennessee, for the purpose of hearing and determining such questions as may be necessary to be passed upon under this act, and their findings and decrees shall be entered on the minute books of the county court of Dyer county, and certified copies thereof, if ordered by the said court, shall be entered on the minute books of the county courts of Lake and Obion counties. And the court costs, not otherwise provided, and expenses of the said judges shall be paid out of the fund of the said levee and drainage district. The proceedings hereunder shall be known and styled as the 'Dyer levee and drainage district' case, and referred to hereafter as the original case. The concurrence of opinion of any two of said judges shall be the finding of said court.''

In subsequent sections provisions are made for the filing of objections on the part of property holders with the court, which shall determine the issues; in short, the power conferred is that of adjudicating all questions of law and fact presented. The right of appeal from the judgment of the court to the supreme court is given.

We are of opinion that the court thus provided for was a new tribunal.

A court is an instrumentality of sovereignty, the repository of its judicial power, with authority to adjudge as to the rights of person or property between adversaries. The presence of a judge or judges is necessary as an essential element of a court. A "court" was defined by Bacon to be "an incorporeal being, which requires for its existence the presence of the judges or a competent number of them."

The term as defined by Mr. Bouvier in his Law Dictionary (quoted by this court in *Railroad* v. *Crider,* 91 Tenn., 489, 505, 19 S. W., 618, 622), is this:

"The presence of a sufficient number of the members of a body in the government, to which the public administration of justice is delegated, regularly convened in an authorized place, at an appointed time, engaged in the full and regular performance of its duties."

The act in question fixes a place and the times for the sessions of the court. It is provided to be composed of three judges. Its jurisdiction, attributes, and functions are those of a court.

It is claimed by the defendants that no new tribunal is established, and that the act should be deemed merely to provide an enlargement of the jurisdiction of the regular county court of Dyer county then in existence. If this had been the purpose, it could have been easily expressed.

On the contrary, no mention is made of an existing court. It is stipulated that any two of the individuals (chairman and judges of county courts) named to act

as judges may hold the court and pass decrees in the absence of the third.   This absent one may be the county judge of Dyer county.   May it be said in truth that in such case the court,. so conceived of as being held, ·is the regular county court of Dyer county?

The court is a new tribunal, vested, it is true, with a limited jurisdiction, and has its genesis, if at all, in the act under review.   Instead of utilizing an existing judicatory, the legislature purposed to create an independent one and to cause it to be presided over by judges drawn from the three counties in which was located the improvement district.   The fact that its minutes are provided to be spread on the minute book of the Dyer county court is an incidental detail, not affecting, in substance, the nature of the court itself.

Manifestly the design of the legislature was to establish an inferior court, under the power given it to that end by the Constitution.   We could not hold otherwise, in furtherance of a praiseworthy enterprise, without doing violence to the language employed by the legislature.

The result is therefore that the chancellor did not err in holding the act to be unconstitutional.   Affirmed.

SWIGGERT, Special Justice, took no part in the consideration and decision of this case.