SEBRING, Justice.
- The Attorney General of Florida, on the relation of John S. Byington, brought this quo - warranto proceeding to determine whether or not the appellant, Thomas N, Tappy, was entitled to hold- the office of county judge' of Volusia County, Florida. The information in the cause was filed on January 27,-1955. On the return .day Tappy moved to quash the information and with said motion filed his answer. Tappy’s motion to quash the information was denied and on motion of Byington for the entry of a final judgment of ouster notwithstanding the answer a judgment of ouster was entered. Tappy has appealed from the judgment.
The information upon which the judgment was entered contained, in substance, the following averments: The Honorable Dan McCarty, then Governor of Florida, died on September 30, 1953. Upon his death, the powers and duties of the office of Governor devolved upon The Honorable Charley Johns, then holding ‘the office of President of the Florida Senate, until the installation in said office of Governor Le-Roy Collins, who had been elected to the office at the 1954 general election, for the unéxpired portion of the regular term to which the late Governor McCarty had been elected, to wit, for the part of said term beginning January 4, 1955, and ending the first Tuesday after the first Monday in January, 1957.
. At the 1952 general election Honorable Robert H. Wingfield was elected County *163 Judge of Volusia County for the four-year,, term beginning on the first Tuesday after the first Monday in January, 1953. While holding this office, Judge Wingfield was elected, at the 1954 general election, to the office of Circuit Judge.for the Seventh Judicial Circuit of Florida for. the regular 6-year term beginning on Tuesday, January 4, 1955.
Prior to December 30, 1954, Judge Wing-field duly qualified for the office of circuit judge and thereupon received his commission; and in a letter to Acting Governor Johns, dated December 30, 1954, (stamped as received in the Governor’s office on Monday, January 3, 1955) he notified the Acting Governor that he was resigning his office of County Judge to take effect “as of midnight on [Monday] January 3, 1955.” Thereafter, on January 3, 1955, said letter of resignation was filed in the office of the Secretary of State with the endorsement thereon by Acting Governor Johns that he had accepted the resignation.
Meanwhile, by letter dated December 28, 1954, Acting Governor Johns notified the Secretary of State that he had, as of said date, appointed the appellant, “Thomas N. Tappy, County Judge of Volusia County, to succeed Robert H. Wingfield, until the first Tuesday after the first Monday in January, 1957, to fill vacancy created by election and qualification of Robert H. Wing-field, to office of Circuit Judge, Seventh Judicial Circuit,” and requested of the Secretary of State that he “prepare the necessary papers and forward the same to” the appellant. As appears from a notation on this letter, the letter was received in thé office of the Secretary of State on December 30, 1954, and the “necessary papers” were immediately sent to the appellant.
On Monday, January 3, 1955, Tappy filed in the office of the Secretary of State his oath of office as said county judge, and a bond, dated January 4, 1955, in the principal amount of $5,000, executed by Tappy as principal and Continental Casualty Company as surety, conditioned that he, Tappy, would faithfully perform the duties of the office. Endorsed on the bond was a notation by the Comptroller of Florida, • “Approved as to surety and amount, Jan. 3, 1955, C. M. Gay, Comptroller. Attention is called to the fact that the bond has not been approved by County Commissioners.”
On January 3, 1955, there was issued to Tappy a commission signed by Charley E. Johns, as Acting Governor of Florida, and attested by R. A.. Gray as Secretary of State, reciting his appointment as County Judge of Volusia County for the period from midnight of Monday, January 3, 1955, to the first Tuesday after the first Monday in January, 1957. Thereafter,, on January 18, 1955, Tappy filed in the office of the Secretary of State another bond dated January 4, 1955, which bore the notation “Duplicate” and was stamped “Jan. 3, 1955,-Secretary of State, Tallahassee, Fla.” . This bond bore the written .approval of the Chairman and members of the Board of County Commissioners of Volusia County, and of C. M. Gay, Comptroller of the State of Florida. '
After Governor Collins took office on Tuesday, January 4, 1955, he notified the Secretary of State, in writing, dated January 10, .1955, that he had, as of January 10, 1955, appointed “John S. Byington, County Judge of Volusia County, succeeding Robert H. Wingfield, until the first Tuesday after the first Monday in January, 1957, to fill the vacancy created by the election and qualification of Robert H. Wing-field to the office of Circuit Judge of the Seventh Judicial Circuit.” Accompanying the notification was a letter directed to .the Secretary of State in which Governor Collins took notice of the prior appointment of Tappy by Acting Governor Johns, and stated, with reference thereto, as follows : • “I take the position that the said office of County Judge has remained and is now vacant notwithstanding the purported appointment and commission issued by the Acting Governor to Mr. Tappy, - because (1) of the want, of authority in the Acting Governor to fill a vacancy commencing during or concurrent with the commencement of my term of office; and (2) due to the fact that the official bond of the said Thomas N. Tappy was not approved by the *164 Board of County Commissioners for Vo-lusia County, Florida, as required by Section 7, Article VIII, of the State Constitution [F.S.A.], prior to the issuance of the commission to him by the Acting Govern- or.”
On January 17, 1955, John S. Byington filed in the office of the Secretary of State his oath of office as County Judge of Vo-lusia County, a loyalty oath executed pursuant to the provisions of Section 876.05 to 876.10, Florida Statutes, F.S.A., and a properly executed surety bond’in the principal amount of $5,000, dated' January 13, 1955, upon which was endorsed the written approval of the State Comptroller and the Board of County Commissioners of Volusia County. On the same day a commission was issued to John S. Byington reciting his appointment to the office as of January 17, 1955.
Upon these allegations of the .information it was charged by the Attorney General that the commission issued to Tappy by Acting Governor Johns was invalid and of no effect, and vested no right in Tappy to the office of County Judge for the period stated therein, for the reasons: “(a) that no vacancy existed in the said office of County Judge until [Tuesday] January 4, 1955; that the exercise of the powers and discharge of the duties of the office of Governor by Acting Governor Johns terminated on January 4, 1955, upon installation to, and assumption of duties by, Governor Collins of that office; that while Governor Collins was not installed in, and did not assume the duties of his said office until approximately noon, January 4, 1955, the official unexpired term to which he was elected commenced immediately after midnight, January 3, 1955; that the vacancy in said office of County Judge and the term of office of Governor Collins commenced simultaneously, and the power to fill said vacancy was not vested in Acting Governor Johns but was vested in Governor Collins.
“(b) That said commission issued to [Tappy] notwithstanding that the said bond filed by him had not been approved by the County Commissioners of Volusia County, Florida, and in violation of the provisions in Article VIII, Section 7, Florida Constitution, to the effect that no Commission shall issue to any county officer until he shall have filed with the Secretary of State a bond, as required, 'approved, by County Commissioners of the county in which such officer resides, and by the Comptroller.’ ”
The answer filed by Tappy to the information in the cause admitted virtually all of the facts set forth in the inforlnation but denied the legal effect thereof so far as they pertained to his right to hold the office, and averred, with respect to his failure to secure the approval of the County Commissioners of his official bond until after Governor Collins had appointed Byington, “that on Wednesday, December 29, 1954, in the absence of [the] Chairman of the Board of County Commissioners, [he, Tappy,] requested [the] vice chairman of said board to call a special meeting * * * for the purpose of approving [his] bond as County Judge and the said * * * vice chairman promised and agreed to call such a meeting for that purpose to be held on Friday, December 31, 1954. On Thursday, December 30, 1954, the * * * vice chairman • informed [Tappy] that there would be no meeting for the purpose of approving [the] bond for the reason that the County Attorney * * * had advised the County Commissioners that there was no vacancy in the office of the County Judge and no legal requirement for holding a meeting for the purpose of approving such a bond. Respondent [Tappy] therefore had his bond in the sum of $5,000, which had already been executed by [him] and by a surety company duly qualified and authorized to do a surety business in the State of Florida and in Volusia County, approved by the * * * Comptroller, and filed the same in the office of the Secretary of State without approval at that time by the County Commissioners. Respondent’s said bond was subsequently approved by the County Commissioners at a special meeting held on January 14, 1955 * * * that the bond filed in the office of the Secretary of State on January 18, 1955, is the same bond that was approved by the *165 County Commissioners on January. 14, 1955, and that the bond so approved by the County Commissioners * * * and filed in the office of the Secretary of State on January 18, 1955, was and is in all re-', spects identical with the respondent’s bond filed on January 3, 1955. * •* * ”
After the answer had been filed, the attorney general moved for a final judgment of ouster notwithstanding the answer; and thereby admitted, as a matter of law, the truth of all well pleaded facts in the answer. City of Auburndale v. State ex rel. Landis, 135 Fla. 172, 184 So. 787; State ex rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, 354, 64 A.L.R. 1307; High, Extraordinary Legal Remedies, 3rd ed., Sec. 710, 719; cf. State ex rel. Hawkins v. Board of Control, Fla., 47 So.2d 608. So it is that by filing the motion the attorney general admitted that the bond filed by Tappy on Monday, January 3, 1955, was in due form and as required by law, except for its approval by the Board of County Commissioners of Volusia County; that Tappy secured the approval of his bond by the County Commissioners on January 14, 1955, which was four days after an appointment had been issued to Byington and three days prior to the time Byington qualified for the office by filing his oath and bond with the Secretary of State, and that Tappy had been prevented from securing the approval of his bond before the appointment of Byington to the office on January 10, 1955, by the refusal of the County Commissioners to call a meeting for the purpose, upon being advised by their attorney “that there was no vacancy in the office of the County Judge and no legal requirement for holding a meeting for the purpose of approving such a bond.”
Upon this set of facts the basic issue for determination is whether or not the trial court erred in granting the motion of the attorney general and entering a judgment “that Thomas N. Tappy be ousted from the office of County Judge of Volusia County, Florida.”
The first question with which we shall deal requires a determination as to whether or not the vacancy in the office of county judge of Volusia County, which, it is conceded, occurred at midnight, Monday, January 3, 1955, was a vacancy which the Acting Governor was entitled to fill; it being admitted that the oath of office was not administered to Governor Collins until noon on Tuesday, January 4, 1955.
Section 2, Article IV, of the Constitution, provides that the ‘.‘first election for Govern- or under this Constitution shall be had at the time * * * of voting for members of the Legislature and State officers, A. D. 1888, and the term of office of the Governor then elected shall begin on the first Tuesday after the first Monday in January after his election.” The section provides, in respect to Governors thereafter elected, that “The Governor shall be elected * * * at the time * * * of voting for members of the Legislature, and shall hold his office for four years from the time of his installation * * *.” (Italics supplied.) In Section 14, Article XVI of the Constitution it is provided that “All State * * * officers shall continue in office after the expiration of their official terms until their successors are duly qualified." (Italics supplied.)
From the plain, simple, unambiguous wording of these Constitutional provisions it is clear that one elected to the office of Governor does not begin his official term on any fixed or definite day but that his term commences only from the time of his installation. It is equally clear that until such event occurs the incumbent then in office continues in office, even though the four-year period from the time of his installation may have expired.
As has been heretofore noted, Governor Collins did not take his oath of office until about noon on Tuesday, January 4, 1955. Section 2, Article XVI, of the Constitution provides, so far as it is-material here, that “Each and every officer of this State * * * shall before entering upon the discharge of his official duties take the following oath of office * * *.” There can be no doubt that because of this provi *166 sion, the taking of the official oath by Governor Collins was an indispensable ingre-' dierit of the installation in office which the Constitution required, and that until this oath was taken Governor Collins was not “duly qualified” as governor, for the reason that without the oath he had no power or authority to discharge the official duties' of the office of governor. Compare Opinion of the Justices, 14 Fla. 277. Therefore, the Honorable Charley E. Johns, upon whom “the' powers and duties of Governor” devolved at the passing of the late Governor McCarty, State ex rel. Ayres v. Gray, Fla., 69 So.2d 187, remained Acting Governor-of Florida until about noon Tuesday January 4, 1955, when the oath was administered to Governor Collins, and was entitled to exercise and perform all the powers and duties of governor, including the authority to exercise any power to appoint to office that was vested in the office of governor, People ex rel. Williams v. Reid, 11 Colo. 138, 17 P. 302, until his successor had qualified in accordance with the requirements of the Constitution.
“Where under the Constitution an officer- continues in office after the expiration of his official term, he continues as a de jure officer subject to the successor in office becoming ‘duly qualified.’ ” State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, 265. And where the legal incumbent of an office is authorized by law to hold over at the expiration of the term until his successor is elected and qualified, “the period of his holding over is as much a part of his tenure of office as the regular period fixed by law; the office is held by the same title and by as high and lawful a tenure after the prescribed term, until the title of a duly elected successor attaches, as before and during such term * * *. ” 67 C.J.S., Officers, § 48(c), page 206. See 43 Am.Jur. 22, Public Officers, Section 164.
Such being the extent of the tenure, powers and duties of an incumbent governor who holds office until his successor is elected • and qualified, it is clear that Acting Governor Johns had the power to fill the vacancy which occurred in the office of County Judge of- Volusia County on midnight, Monday, January 3, 1955, because of the resignation of County Judge Wingfield and his qualification for the office of circuit judge to which he had been elected.
The fact that, in the exercise' of the power and duty to fill the vacancy, Acting Governor Johns appointed Tappy several days prior to the time the office held by County Judge - Wingfield actually became vacant did not invalidate the appointment. A prospective appointment is valid if the governor who makes the appointment is still in office at the time the vacancy occurs and the commission becomes effective. As the general rule is stated by an' eminent text writer: “A prospective appointment to fill an anticipated vacancy in a public office, made by a person or body which, as then constituted, is empowered to fill the vacancy' when it arises, is, in the absence of express law forbidding it, a legal' appointment and vests title to the office in the appointee. Thus where a public officer resigns his office to take effect at a future day, and his resignation is accepted, the appointing power being, as then organized, authorized to fill the vacancy when it shall occur, may appoint a successor, the appointment to take effect when the resignation becomes operative.” Mecbem on Public Offices and Officers, pp. 66, 67, Section 133. See also 67 C.J.S., Officers, § 30, page 159; 42 Am.Jur., Public Officers, Section 129, page 975.
This general rule has been recognized in Florida: “When an officer tenders his resignation to take effect at a subsequent date, the office does not ‘become vacant’ until the date on which the resignation becomes effective, though before such effective date of the resignation, the Governor may grant a commission to an appointed successor to be effective the day the resignation takes effect.” (Italics supplied.) In re Advisory Opinion to the Governor, 117 Fla. 773, 158 So. 441, 442.
A second issue for determination upon the facts presented is whether the lack of approval of Tappy’s bond by the County Commissioners of Volusia County until aft *167 er the appointment of Byington by Governor Collins made Tappy’s appointment and the commission granted to him by Acting Governor Johns prior to Byiñgton’s appointment void and ineffective, or at least revocable by the act of the executive in making a succeeding appointment, notwithstanding the fact that the commissioners did approve Tappy’s bond prior to the time the second appointee actually qualified for the office.
The parties are not in accord as to the applicability to the appointment under consideration of Section 7, Article VIII of the Florida Constitution, which providés, so far as is material here, that “All county officers, except Assistant Assessors of Taxes, shall, before.-entering upon the duties of their respective offices, be commissioned by th'c Governor; but no such commission shall issúe'tó any such officer, until he shall have filed with the Secretary'of State a good and siifficient bond, in such sum and upon such conditions, as the Legislature shall by law prescribe, approved by the county commissioners of the county in which such officer resides, and by the Comptroller. * . * * If any person elected, or appointed to any county office, shall fail to give bond. and qualify within sixty days after his election, the said office shall become vacant.”
, On the one hand, the appellee contends that this section of the Constitution applies to all county officers, excepting, of course, the office of assistant assessor of taxes; and that inasmuch as a county judge is a county officer it includes this office. On the other hand, the appellant contends that the section is not applicable to the office of county judge but is applicable only to the county officers specifically named in Section 6, Article VIII of the Florida Constitution, namely: “A Clerk of the Circuit Court,, a Sheriff, Constables, a County Assessor of Taxes, a Tax Collector, a Superintendent of Public -Instruction and a County Surveyor”; and-that the office of county judge is controlled' by other provisions of the Constitution. Section 7, Article IV as amended by Sections 6 and 7 of Article XVIII; also Section 33, Article V.
■ The -parties- are'also in disagreement, assuming, for the sake of argument, that Section 7, Article VIII, is applicable to the office of county judge, as to whether or not the giving of-the bond is a condition precedent to the effectiveness of a commission oi; a condition subsequent which if not complied with in a timely fashion will operate to terminate a previously granted commission. This disagreement arises by reason of the fact that whereas in the first portion of Section 7 it is provided that “no sitch commission shall issue to any such officer, until he shall have filed * * * . a * * * bond * *■ * approved by the County Commissioners * * * and by the.Comptroller”, the last sentence of Section 7 provides that “If any person * * * appointed to any county office, shall fail to give bond and qitalify within sixty days * * * the said office shall become vacant.” (Italics supplied.) • ' ,
While the questions posed by these opposing contentions are indeed of more than passing interest, they need not be answered here, for even if we were to agree that the contentions of the appellee were valid, our decision on the point would not be fatal to the cause of the appellant. Section 36.03, Florida Statutes 1953, F.S.A., provides that “Each, county judge shall give bond in a sum to be fixed by the board of county commissioners of his county, which shall be not less than one . thousand dollars nor more than five thousand dollars. Such bond shall be otherwise governed by the provisions governing bonds to be given by clerks of the circuit courts.” Section 28.01, Florida Statutes. 1953, F.S.A., relating t.o bonds to be given by clerks of the circuit courts, provides that such bonds “shall be conditioned upon the faithful discharge of the duties of his office”; and Section 113.07, Florida Statutes 1953, F.S.A., requires that in all cases “where public officials, not honorary, either state, county or district, are now, or shall hereafter be required to post fidelity or performance bonds, all such bonds shall be written by surety companies authorized by law to do business in the state of Florida.” '
*168 In the instant case, Tappy executed a bond dated January 4,1955, in the maximum principal amount required under the law. Section 36.03,- supra. It was conditioned “upon the faithful discharge of the duties of [the] office.” Section 28.01, supra. It was written by a surety company “authorized by law to do business in the state of Florida.” Section 113.07, supra. It was approved by the Comptroller, as required by Section 7, Article VIII of the Florida Constitution. It was filed with the Secretary of State on January 3, 1955, which was prior to the date on which Governor Collins appointed Byington. Thus, the bond met every constitutional and statutory requirement, with the exception of its approval by the county commissioners.
It is settled in this jurisdiction that the sufficiency of a corporate surety now required on all official bonds under Section 113.07, Florida Statutes, F.S.A., is simply a matter of statutory qualification. State ex rel. Pan American Surety Co. v. Limpus, Fla., 41 So.2d 164. And the duty of the county commissioners in passing upon the sufficiency of the bond in the instant case was purely ministerial in nature, there being no call under the circumstances for the exercise of any discretion in setting the amount of the bond, section 36.03, supra, or in approving the solvency of the surety. The fact that, as affirmatively reflected by the record in this cause, the bond executed by Tappy met every possible lawful requirement clearly serves to distinguish the present case from those in which the terms of the proffered bond are not made to appear, or those in which the approval of the bond, under the controlling laws, may have involved an element of judgment or discretion. State ex rel. Davis v. Howell, 100 Fla. 1391, 131 So. 320.
As already noted, Tappy’s request for approval of his bond, made shortly after his appointment on December 28, 1954, was rejected by the commissioners on the sole ground that in their opinion, or that of their counsel, “there was no vacancy in the office of County Judge and no legal requirement for holding a meeting for the purpose of approving such a bond.” By the established rule of the decided cases, the refusal on the part of such qualifying officers to act in the premises was placed upon a ground that was wholly untenable. “It is unquestionably the primary function of the executive * * * to decide when any such vacancy exists;” and to infer that a body invested with a duty like that here involved has “the further duty or the power to question the legality of the exercise of the authority to appoint,” would mean that it “has the power to deny to the governor the right of the constitutional evidence that he has even made an appointment,” which under certain circumstances, would entirely frustrate the executive’s accomplishment of a lawful objective. State ex rel. Fleming v. Crawford, 28 Fla. 441, 10 So. 118, 14 L.R.A. 253. The general principle has been acknowledged that “A person or * * * board whose duty it is to approve an official bond has no right to refuse its approval on the ground that the person offering to qualify has no title to the office. Throop, Pub.Off. §§ 170, 172.” Schmulbach v. Speidel, 50 W.Va. 553, 40 S.E. 424, 431, 55 L.R.A. 922. And in carrying out such a duty in regard to an executive appointment, the officer “in no wise commits himself to the legality of such act” and “in no wise implies any opinion of his as to the regularity or legality of such proceedings.” State ex rel. Fleming v. Crawford, supra.
Consequently, it is plain that the commissioners, under a misapprehension as to their lawful right to permit or refuse the making of the bond at the time in question, temporarily prevented Tappy’s qualification in that particular, and thereby prevented him from perfecting his title to the office prior to the purported revocation or new appointment by the successor executive; However, this action cannot prejudice the rights of Tappy; for it is the established rule that “where the officer * * * has done all that he can towards qualifying and is prevented from fully complying with the law by the wrongful act of the approving officer or the person with whom the bond must be filed, he cannot be deprived of his office. Jones v. State, [to Use of Blow] 7 Mo. 81, 37 Am.Dec. 180; *169 People [ex rel. Casserly] v. Fitch, 1 Cal. 519; Duffy v. State [ex rel. Edson] 60 Neb. 812, 84 N.W. 264; Ross v. Williamson, 44 Ga. 501; State [ex rel. Miller} v. Hadley, 27 Ind. 496; Flatan v. State [ex rel. Edwards] 56 Tex. 93.” State ex rel. Wallace v. Callow, 78 Mont. 308, 254 P. 187, 194. Accord State ex rel. Law v. Saxon, 25 Fla. 792, 6 So. 858; State ex rel. Davis v. Howell, 101 Fla. 656, 132 So. 647.
To hold otherwise would be to recognize that qualification officials have the power, on grounds wholly out of their sphere of competence, to frustrate and set at naught constitutional executive power that has been lawfully exercised. Such a result would be manifestly ridiculous and beyond any reasonable intendment of the provisions of the law in question. While some effort is made by the appellee to draw a distinction between officers elected, and those appointed to office, so far as their status prior to completion of their qualification-and assumption of office may be concerned, it cannot be reasonably contended that, as to either class, capricious conduct on the part of qualifying officials should be permitted to stifle the rights of such officers.
For the reasons stated; we are of, the opinion that when the vacancy in the office of County Judge of Volusia County occurred at the end of Monday, January 3, 1955, the commission held by County Judge Wingfield terminated, the office of County Judge became vacant, and the commission issued to Tappy by Acting Governor Johns became immediately effective. Tappy having theretofore duly qualified in accordance with the law — or what in law must be held equivalent — having done everything reasonably within his power to meet the requirements of the qualification law, -the holder of the office of Governor, by whatever name, was without power to revoke the commission, but could only remove for cause where cause existed. 42 Am.Jur. 959, 960, 962, Public Officers, sections 104, 105, 110; 89 A.L.R. 135; 67 C.J.S., Officers, § 33, page 161. This is so far the reason that “as a fact which has existed cannot be made never to have existed, the appointment cannot be annihilated; and, consequently, if the officer is by law not removable at will * * * the rights he has acquired are protected by the law, and are not-resumable. by the [executive].” Marbury v. Madison, 1 Cranch 137, 167, 2 L.Ed. 60.
■ What has been said above in-respect to the limitation upon the right of an executive presently in office to withdraw an appointment is equally applicable to his successor,, because the supreme executive power of the state, which is- vested in the office of governor, is continuous and never ending. “It knows neither names nor persons. It began with the first Governor, has continued ever since, and will continue unbroken so long- as the Constitution exists.” While a successor to the office has; the same power of removal as his predecessor, he has no greater power than that which would have been possessed by his predecessor had he remained in office. Barrett v. Duff, 114 Kan. 220, 217 P. 918. As: the matter is stated in American Jurisprudence: “Officers in which the executive power of appointment is vested are generally regarded as continuous offices, the power of the successor with respect to matters arising in the previous administration being considered as exactly the same as that of his predecessor. It would seem then that an appointment to office which has, become complete and irrevocable will continue so.” 42 Am.Jur. 962, Public Officers, Section 110. See also People ex rel. Williams v. Reid, 11 Colo. 138, 17 P. 302, and State ex rel. Haight v. Love, 39 N.J.L. 14; Attorney General ex rel. Haight v. Love, 39 N.J.L. 476.
It follows- from the conclusions reached -that the judgment appealed from should be reversed with directions that a judgment be-entered in favor of the appellant, .in conformance with the principles expressed in this opinion.
It is so ordered.
DREW, C. J., BUFORD, J., and Mc-NEILL, Associate Justice, concur.
*170 TERRELL and THOMAS, JJ., dissent.