DREW, Justice.
The sole question before us in these two cases is whether under the 1885 Florida Constitution a substitute official *581 appointed to discharge the duties of a disqualified state official under Florida Statutes Section 120.09(2), F.S.A. must be formally commissioned and take an oath of office before he has jurisdiction to act. Case No. 38,582 is an appeal from a District Court of Appeal, Third District, order denying without opinion a petition for writ of certiorari.[1] Inherent in the district court order was an initial judicial construction of Article IV, Section 14, and Article XVI, Section 2, of the Florida Constitution (1885 as amended), F.S.A., to the effect that the provisions therein did not apply in this case, thus rendering that order reviewable by appeal to this Court under Article V, Section 4, of the Florida Constitution. We issued a writ of certiorari in Case No. 38,573 to review the same district court order from which the appeal is taken. Certiorari jurisdiction is here by virtue of our authority to review decisions affecting a class of state officers,[2] the class in this instance comprised of all substitute officers appointed to act for a disqualified official under Section 120.09(2) of the Administrative Procedure Act. The two cases were consolidated for oral argument and will be disposed of in one opinion.
The Beverage Department of Florida, through its duly commissioned director, issued Treasure, Inc., operator of the Bonfire Restaurant and Lounge, a “Notice to Show Cause Why Beverage License Should Not Have Civil Penalty Assessed Against It or Be Suspended or Revoked.” The Beverage Director disqualified himself from proceeding further in the case after an “affidavit of disqualification” had been filed by an officer of Treasure, Inc.[3]
Meanwhile the Governor wrote a letter to the Honorable Frank A. Orlando, a juvenile judge in Broward County, purporting to appoint him Substitute Beverage Director to hear this cause, pursuant to Florida Statutes Section 120.09(2).[4] Judge *582 Orlando by reply letter indicated his acceptance. Prior to the hearing Treasure, Inc., filed a “Suggestion of Lack of Jurisdiction and Authority,” alleging that the Governor’s letter of appointment was legally insufficient to confer upon him jurisdiction and authority to hear and decide the cause. The Suggestion was orally denied by the Substitute Director prior to hearing testimony on the merits. After presentation of the evidence and argument of counsel, the Substitute Director entered an order imposing a $1,000 fine upon Treasure, Inc., and suspending its beverage license for 25 days. Treasure, Inc.’s petition for writ of certiorari was denied by the district court.
Treasure, Inc.’s position is that a state officer appointed to exercise sovereign state powers on a temporary basis pursuant to Florida Statutes Section 120.09(2), F.S.A. must have been formally commissioned and have taken an oath of office as required by Article IV, Section 14, and Article XVI, Section 2, of the 1885 Florida Constitution. We agree.
Florida Statutes Section 561.05 (1967), F.S.A. provides that the State Beverage Director shall be appointed by the Governor. Section 561.29 sets forth the power and authority of the Beverage Director in connection with revocation and suspension proceedings. Although the Director can designate one of his assistants to perform certain functions such as examination of records and the conducting of hearings, he alone has the authority to make the decision of whether to suspend or revoke a license or impose a penalty.
Section 120.09(2) of the Florida Administrative Procedure Act allows any member or official of an administrative body or governmental agency to be disqualified, either voluntarily or involuntarily, for “bias, prejudice, interest or other causes” in any particular matter. The section provides for replacement of the disqualified officer as follows:
“If the disqualified member holds his membership by appointment the appointing power shall appoint a substitute to serve temporarily in such pending matter in lieu of the disqualified member.”
In the particular matter for which the Substitute is appointed to temporarily serve he necessarily exercises all powers and authority of the office that would ordinarily be exercised by the disqualified official. It is inconceivable that such an office holder should fill the office and exercise the sovereign powers of the State without having had such authority conferred upon him in the same manner as the permanent office holder.
In this instance the appointment of the Beverage Director was evidenced by a commission issued pursuant to Article IV, Section 14, of the 1885 Florida Constitution which read as follows:
“All grants and commissions shall be in the name and under the authority of the State of Florida, sealed with the great seal of the State, signed by the Governor, and countersigned by the Secretary of State.”
This section of the Constitution was still in effect in June, 1968, the time of the purported appointment of the Substitute Director in this cause.[5] In addition, Article XVI, Section 2 of the 1885 Constitution applicable to this cause required that every *583 state officer take an oath of office. The provision read as follows:[6]
“Each and every officer of this State, including: the members of the Legislature, shall before entering upon the discharge of his official duties take the following oath of office: I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of-on which I am now about to enter. So help me God.”
Our statutes require that all commissions be recorded in the office of the Secretary of State and that “the oath of office of the person named in said commission shall be endorsed on said commission * * [7]
The Governor, being the appointing power for the position of Beverage Director, has, pursuant to Florida Statutes Section 120.09, F.S.A. attempted to appoint a Substitute Beverage Director by a letter which neither bears the Great Seal of the State of Florida nor is countersigned by the Secretary of State. It is not in any sense a commission, it is not recorded in the office of the Secretary of State, and it does not have endorsed thereon the oath of office required by the Florida Constitution. Never having received a duly executed and authenticated commission with the oath of office endorsed thereon, and never having taken the oath of office, the Substitute Director had no power or authority to act in place of the disqualified Beverage Director.
The formalities attendant upon assumption of a public office such as Beverage Director are not mere “technical niceties.” They have a purpose. Appointment of officials to exercise the state’s sovereign powers is not lightly regarded, as witnessed by the requirement that many of the Governor’s appointees must be confirmed by the state Senate.[8] The responsibility and power residing in an official such as the Beverage Director is enormous, as evidenced by his power to suspend or completely revoke a liquor license which this Court judicially knows often has a high value. The exercise of sovereign power is constitutionally restricted to those who meet the constitutional requirements — and only to those. The taking of the oath and the issuing of the formal commission not only constitute the official conveyance to the recipient of a portion of the state’s sovereign power, but serve to impress upon the appointee or elected official the great public trust and confidence which is placed in him by his appointment.
This Court long ago held that in the absence of a duly executed commission, the person appointed to exercise the state’s power lacks the authority to exercise such power. In State ex rel. Fleming, Governor v. Crawford, Secretary of State,[9] this Court stated :[10]
*584 “We see from the provision of our own constitution last quoted that the purpose of its framers, and the people who adopted it, was that all commissions issued by the state should be sealed with the great seal of state, signed by the governor, and countersigned by the secretary of state. That it is, under this section, the official duty of the officers named to sign and countersign, and the duty of the secretary of state, who, by another section of the same article, is made the custodian of the seal, and whose countersigning is an attending testimony of the authorized use of such seal, to seal all commissions emanating from the state, is the only interpretation of the organic law that would not violate common reason. What is a ‘commission,’ in the sense in which it is here used? It is written authority or letters patent issued or granted by the government to a person appointed to an office, or conferring public authority or jurisdiction upon him. Bouvier’s Tomlin’s and Abbott’s Law Dictionaries, ‘Commission;’ United States v. Reyburn, 6 Pet. 352, 8 L.Ed. 424. The commission is not the appointment itself, but it is the evidence of the appointment. State v. Jeter, 1 McCord, 233. Where the appointment is evidenced by no act but the commission, the two, says Judge Marshall in Marbury v. Madison, [1 Cranch. 137, 2 L.Ed. 60] supra, seem inseparable, it being impossible to show an appointment otherwise than by proving the existence of the commission, which, though not necessarily the appointment, is the conclusive evidence of it. * * * in State ex rel. Cornwell v. Allen, 21 Ind. 516, that where the title to an office is derived solely by executive appointment the commission of the executive is the only legal evidence of such title. See, also, People ex rel. Melony v. Whitman, 10 Cal. 38.
“There can be no doubt that the word ‘commissions,’ as used in the above section of our constitution, at least includes appointments to office. * * *
“Any written appointment of a person to an office by the governor of this state is a commission, and the express fiat of the constitution is that all commissions issued under the authority of the state shall be signed by the governor, and sealed with the great seal of state, and countersigned by the secretary of state. The purpose of the constitution is that the warrant of all persons professing to represent the authority of the state shall be in the form indicated, and none other. The authority to appoint to an office, or to delegate the exercise of the state’s power, contemplates conformity to this section of the constitution in making the appointment; and this section makes it the duty of the officers named, whenever the power of appointing is exercised, to see that the commission or written evidence of the appointment is signed and authenticated as therein directed.” [Emphasis added.]
This Court has undeviatingly held to the view that the taking of the oath of office prescribed in Article XVI, Section 2 of the 1885 Florida Constitution was a prerequisite to filling the office and acquiring the necessary jurisdiction and power to proceed and exercise the authority of that particular office.[11] In Tappy v. State ex rel. Bying-ton [12] the issue was whether the Governor possessed the power of appointment prior to taking the oath of office. This Court held that he had no such power :[13]
“As has been heretofore noted, Governor Collins did not take his oath of office until about noon on Tuesday, January 4, 1955. Section 2, Article XVI, of the
*585 Constitution provides, so far as it is material here, that ‘Each and every officer of this State * * * shall before entering upon the discharge of his official duties take the following oath of office * * *.’ There can be no doubt that because of this provision, the taking of the official oath by Governor Collins was an indispensable ingredient of the installation in office which the Constitution required, and that until this oath was taken Governor Collins was not ‘duly qualified’ as governor, for the reason that without the oath he had no power or authority to discharge the official duties of the office of governor. * * *”
[Emphasis added.]
The State Beverage Department has cited numerous cases to support its basic argument that the Substitute Beverage Director was a de facto public officer whose official acts are just as valid and binding as those of a de jure officer; and that his status and the validity of his acts are not subject to attack.[14] This Court has not hesitated to apply the de facto public officer doctrine in appropriate circumstances, but the very cases cited by the Beverage Department reveal that the de facto argument is wholly inapplicable to the facts before us.
Florida follows the general rule that (1) acts of a de facto officer are valid as to third persons and the public until title to such office is adjudicated insufficient, and (2) such officer’s authority may not be collaterally attacked or inquired into by affected third parties.[15] This principle is grounded upon public policy. The general public who has official business with numerous government officials cannot be burdened with investigating the regularity of appointment of one purporting to hold a particular office. The public has a right to assume that officials apparently qualified and holding office do in fact properly occupy the position and have authority to exercise the powers of the office. But when a party to be affected by an official’s act or decision holds actual knowledge that such official might not in fact legally occupy the office, and when the party makes a timely and direct attack on the authority and jurisdiction of the person attempting to exercise the powers of the office, there is no reliance by an innocent party and no reason to apply the rule.[16] Any other rule would unreasonably restrict bonafide challenges to public officials’ authority and jurisdiction.
We are not presented with the situation where once a public official has acted a third party decides to challenge the legality of the official’s appointment. On the contrary, the only party directly interested in the outcome of this controversy, other than the state and public in general, prior to any formal proceedings on the merits directly challenged the effectiveness of the appointment and thereby any and all jurisdiction or authority to act in the matter.
Sawyer v. State,[17] cited by the Beverage Department, is representative of cases wherein we found pertinent and applied the principles underlying the doctrine of the validity of a de facto officer’s act. At issue there was the validity of an information which was signed, sworn to, and filed by the assistant county solicitor rather than by the county solicitor himself. Lack of lawful authority on the part of the assistant county solicitor to sign and file the information was employed as a ground for a motion to vacate the judgment which was filed after the current term of court.
*586 We held that such an objection could not be made at that late date, stating as follows :[18]
“We are therefore of the opinion that, whether exercising it lawfully or not, the assistant county solicitor was exercising de facto the power and authority of the de jure county solicitor, in signing and filing such information under his oath, and so, acting under authority of a statute which has never been declared unconstitutional, such act should be given the same effect as to the public and third persons as would ordinarily be given to the act of an officer de facto occupying and exercising the functions and powers of a de jure office, unless timely objection had been made thereto before pleading to the merits and going to trial.” [Emphasis added.]
Here there is no question that the Substitute Director’s authority and jurisdiction was timely questioned, and any import which the Sawyer case might have on the issue here presented negates rather than supports the Beverage Department’s argument.
Implicit in the following statement contained in State ex rel. Robert v. Murphy,[19] setting up the definition and requirements for a de facto officer, is the element of reliance by an affected party which is absent in the present instance :[20]
“A mere de facto officer is one who is without lawful right to exercise the functions of the office which he is exercising. He must show that he is acting under such circumstances of reputation or acquiescence as were calculated to induce people without inquiring to submit to or invoke his' action, supposing him to be the officer he assumes to be. ‘Third persons, from the nature of the case, cannot always investigate the' right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer; and, if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question.’ ” [Emphasis added.]
The Order suspending Treasure, Inc.’s beverage license and imposing a fine upon Treasure, Inc., was entered by a purported Substitute Beverage Director who neither took an oath of office nor received a valid commission conveying upon him the authority to discharge the duties of the office, contrary to the requirements of Article IV, Section 14, and Article XVI, Section 2 of the 1885 Florida Constitution. We cannot disregard or ignore the plain and simple requirements of the Constitution. The Substitute Beverage Director was completely without authority or jurisdiction to hear and dispose of the case against Treasure, Inc. His order purporting to dispose of the cause is void and without effect.
The decision of the district court is hereby reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.
It is so ordered.
THORNAL, CARLTON and BOYD, JJ., concur.
ERVIN, C. J., dissents with opinion.
ROBERTS and ADKINS, JJ., dissent and concur with ERVIN, C. J.

. Treasure, Inc., d/b/a Bonfire Restaurant & Lounge v. State Beverage Department of Florida, 221 So.2d 244 (3d Dist.Ct. App.Fla.1969).

. Fla.Const. art. V, § 4(2), F.S.A. See Florida State Board of Health v. Lewis, 149 So.2d 41 (Fla.1963), and State v. Robinson, 132 So.2d 156 (Fla.1961).

. After disqualifying himself the Director attempted to act by issuing a “Notice of Hearing.” A Rule Nisi in Prohibition was issued and later made permanent by the District Court of Appeal, Third District, prohibiting the Director from taking any further action relating to the cause. Third District Court of Appeal Case No. 68-495, unreported orders of the court dated May 29, 1968 and June 17, 1968.

. “(2) Any member of a commission, authority, administrative body or governmental agency existing under the laws of the state may be disqualified, either voluntarily or involuntarily, for bias, prejudice, interest or other causes, to serve in a particular investigation, inquiry, hearing, trial, appeal, matter or thing. If the disqualified member holds his membership by appointment the appointing power shall appoint a substitute to serve temporarily in such pending matter in lieu of the disqualified member. * * *” Fla.Stat. § 120.09(2), F.S.A. The letter from the Governor to Judge Orlando reads as follows :
“June 6, 1968
“Honorable Frank Orlando Judge
Broward County Courthouse Fort Lauderdale, Florida Dear Frank:
Pursuant to the provisions of Section 120.09, Florida Statutes, the Director of the State Beverage Department of Florida has disqualified himself from hearing in the matter of Treasure, Inc. d/b/a Bonfire Restaurant and Lounge, a case now pending for hearing before the department.
Therefore, in accordance with Section 120.09 (2), Florida Statutes, I am appointing you to serve temporarily to hear the matter now pending before the State Beverage Department of Florida:
Re-: Treasure, Inc., d/b/a Bonfire Restaurant and Lounge.
Mr. W. R. . Phillips, Attorney for the State Beverage Department of Florida will contact you within the next several days advising you of the date, etc. of the above mentioned matter.
Sincerely,
Governor”
CRK/mjs
cc: Mr. Don D. Meiklejohn
Bill Phillips, Esquire
Marion E. Sibley, Esquire

. The Florida Constitution — 1968 Revision contains no section equivalent to Article IV, Section 14 of the 1885 Constitution. However, the 1885 constitutional provision continues in the form of a statute in accordance with Article XII, Section 10 of the 1968 Revision. See Fla.Const. art. IV, § 1(a) and (f) (1968 Revision).

.The 1968 Revision’s equivalent requirement that public officers take an oath of office is found in Article II, Section 5(b). which reads as follows:
“Each state and county officer, before entering upon the duties of the office, shall give bond as required by law, and shall swear or affirm:
T do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the state; and that I will well and faithfully perform the duties of (title of office) on which I am now about to enter. So help me God.’
“and thereafter shall devote personal attention to the duties of the office, and continue in office until his successor qualifies.”

. Fla.Stat. § 113.06 (1967), F.S.A.

. See Fla.Const. art. 4, § 6 (1968 Revision).

. 28 Fla. 441, 10 So. 118 (1891).

. Id. at 493-497, 10 So. at 124-125.

.Opinion of the Supreme Court to the Governor, 14 Fla. 277 (1872), (Office of Attorney General deemed vacant for appointee’s failure to take oath in form prescribed by constitution); Tappy v. State ex rel. Byington, 82 So.2d 161 (Fla.1955).

. Tappy v. State ex rel. Byington, 82 So.2d 161 (Fla.1955).

. Id. at 165-166.

.See, e. g., State ex rel. Hawthorne v. Wiseheart, 158 Fla. 267, 28 So.2d 589 (1946) ; Sawyer v. State, 94 Fla. 60, 113 So. 736 (1927) ; State ex rel. Robert v. Murphy, 32 Fla. 138, 13 So. 705 (1893); Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 So. 523 (1890).

. Sawyer v. State, 94 Fla. 60, 113 So. 736 (1927); State ex rel. Robert v. Murphy, 32 Fla. 138, 13 So. 705 (1893).

. See Ridout v. State, 161 Tenn. 248, 30 S.W.2d 255, 71 A.L.R. 830 (1930).

. 94 Fla. 60, 113 So. 736 (1927).

. Id. at 84, 85, 113 So. at 745 (1927).

. 32 Fla. 138, 13 So. 705 (1893).

.Id. at 174, 13 So. at 716 (1893).