QUESTIONS: 1. When is a vacancy created in a judicial office as a result of a letter sent to me by a judicial officeholder which states: ". . . I hereby unconditionally resign and retire as of midnight on January 6, 1975, so that a vacancy will be created the following day, January 7, 1975, which will be filled by the person who will be elected in the 1974 judicial election"? 2. What are my duties and obligations with respect to the appointment of a successor under the Constitution of the State of Florida?
SUMMARY: When a judicial officeholder submits a resignation to become effective at a later date, and said resignation is accepted, a vacancy in that judicial office does not occur until the effective date of the resignation. The governor's duties and obligations with respect to filling a vacancy in a judicial office are prescribed by Art. V, s. 11(a), State Const. — the governor must appoint one of the persons nominated by the appropriate judicial nominating commission within sixty days after the nominations have been certified to the governor for a special interim term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election. Pending determination otherwise, when a judicial officer "unconditionally" resigns as of midnight on January 6, 1975, "so that a vacancy will be created on the following day, January 7, 1975, which will be filled by the person who will be elected in the 1974 judicial election," such condition of or contingency upon the tender of resignation is of no legal efficacy and is legally ineffective to accomplish the designed purpose and the governor is powerless to take any action to comply with the terms of such condition or contingency. Thus, in order for there to be a judicial election in 1974 (for a seat on the Florida Supreme Court, as referred to in the letter quoted in question 1), a vacancy must occur, if by resignation, pursuant to a resignation made and becoming effective prior to the September, 1974, judicial elections. AS TO QUESTION 1: The terms of office of Supreme Court justices, judges of the district courts of appeal, and circuit judges are six years, Art. V, s. 10(b), State Const., and all such justices and judges in office upon the effective date of revised Art. V retained their offices for the remainder of their respective terms. Article V, s. 20(e)(1). The terms of all such justices and judges, and the cycles thereof, were fixed by the Constitution of 1885, as amended, at six years. Article V, ss. 15 and 16, State Const., 1885. The term of the judicial officer in question which was continued by s. 20(e)(1) of revised Art. V, expires on January 2, 1979. Since the law — the organic law in this instance — determines the term of an office, Colbath v. Adams, 184 So.2d 883 (Fla. 1966), it may not be altered by any act on the part of the governor in commissioning an officer or by any act of an officer prior to the expiration or termination thereof by operation of law. See State ex rel. Landis v. Taylor,146 So. 549 (Fla. 1933); State ex rel. Landis v. Bird, 163 So. 248 (Fla. 1935); and in re Advisory Opinion to the Governor, 171 So.2d 539
(Fla. 1965). While it may be said that an elective officer has it within his power to cause the occurrence of a vacancy in office, as by resignation or failure to duly qualify or by abandonment, the organic law does not confer any authority upon an elective officer to bring about any actual or constructive termination of his term of office before the expiration of such term as established by the fundamental law, or to anywise effect any alteration of such term by any act on his part not duly authorized by law. Article X, s. 3, State Const.; State ex rel. Landis v. Bird, supra. Consequently, the subsistent term of the subject judicial officer continues to run until duly vacated or terminated by force of the Constitution. Apart from the Resign-to-Run Law (s.99.012, F.S.), I am not aware of any statute that would operate to effect an actual or constructive vacation or termination of the subject term of office. The successor to a completed term of a judicial office is to be determined by an election for the full term in accordance with the provisions of Art. V, s. 10, State Const., and Ch. 105, F.S. However, should a judicial office become vacant prior to the expiration of an incumbent's term, the vacancy thus created must be filled by an appointment by the governor for a special term as specified by and in accordance with Art. V, s. 11(a), State Const. Article X, s. 3, State Const., declares the reasons for which an office will become vacant, providing that a vacancy in office shall occur, inter alia, upon the resignation of the incumbent. Section 114.01(2), F.S., is to like effect, deeming an office to be vacant, inter alia, in the case of resignation of an incumbent. As stated in 67 C.J.S. Officers s. 50 d. (1950): As a general rule, no judicial declaration or adjudication that a vacancy has occurred is necessary. A vacancy in office for any of the causes enumerated in the constitution or a statute is usually regarded as occurring at the time of the happening of the event which is the cause of the vacancy, and no judicial determination that the vacancy has occurred is necessary. (Emphasis supplied; citations omitted.) In Florida, "it is unquestionably the primary function of the Executive . . . to decide when any such vacancy exists." State ex rel. Fleming v. Crawford, 10 So. 118, 121 (Fla. 1891). Accord: Tappy v. State, 82 So.2d 161, 168 (Fla. 1955). In State ex rel. Landis v. Bird, 163 So. 248, 260-261 (Fla. 1935), the court wrote: . . . The Governor has the right to determine for himself, or upon the advice he has a right to ask by Section 13 of article IV of the Constitution [of 1885], whether a vacancy exists in an office, and if so, whether the Governor is duly authorized to exercise his executive power to appoint an officer; yet an executive appointment of an officer is not authorized unless a vacancy in the office exists which could legally be filled by executive appointment, or unless the power to appoint the officer is conferred by law upon the Governor; and the ultimate determination of the existence of the authority to appoint an officer is a judicial function in appropriate procedure. Neither the State Constitution nor the Florida Statutes provide any guidance as to whether the resignation must be accepted to be valid, or the time at which a resignation becomes effective resulting in a vacancy in office. However, these questions have been considered by the Florida courts. Assuming that the resignation is not coupled with abandonment of the office as was the case in State ex rel. Landis v. Heaton, 180 So. 766 (Fla. 1938), the initial question as to whether a resignation must be accepted to be valid was answered in the affirmative in State ex rel. Gibbs v. Lunsford, 192 So. 485
(Fla. 1939). The essential facts of that case were that on November 7, 1938, one W. B. Caswell, Jr., the constable from Bay County, Florida, tendered his resignation to the governor, stating that it was to be "effective as of date, November 7th, 1938." [At]192 So. at 486. On November 8, 1938, a general election was held for that office. On the following day, November 9, 1938, the governor accepted Caswell's resignation. The court first noted that there was "no constitutional or statutory provision in Florida fixing the effective date of a resignation." Id. at 487. After an exhaustive analysis of the case law of our sister states and other relevant authorities, the court concluded: . . . the weight of authority in this country, in the absence of constitutional and statutory provisions to the contrary, is that a resignation of a public office cannot be effective until it is accepted on the part of the appointing power. . . . Id. at 489. (Emphasis supplied.) Thus, the court held: The record here shows that the acceptance of the resignation, supra, on the part of the appointing power, the Governor of Florida, was dated November 9, 1938, and became effective at said time, so on November 8, 1938, when the election was held [and another person purportedly elected to the office] . . . there was not a vacancy in the office of Constable . . . . There had been no legal election . . . . Id. (Emphasis supplied.) Accord: Attorney General Opinion 062-86; see also 26 Fla. Jur. Public Officers s. 79 (1959). It should be noted that there being no statutorily or constitutionally prescribed manner in which a resignation must be accepted, the acceptance . . . may be orally or in writing, or it may be shown by the performance by the Governor of an official act which it would not be his duty and which he would have no right to perform, unless a vacancy had occurred by resignation; and where such an act is shown to have been performed by him, it may be equivalent to and conclusive of an acceptance of the resignation. State ex rel. Jackson v. Crawford, 79 So. 875, 876 (Fla. 1918). The question of when a prospective resignation, assuming that it has been accepted, becomes effective has also been answered by the court. In in re Advisory Opinion to the Governor, 158 So. 441, 442 (Fla. 1934), it was held that: Under the Constitution and laws of this state, the Governor is authorized to grant a commission to fill a vacancy only when an office "shall become vacant." When an officer tenders his resignation to take effect at a subsequent date, the office does not "become vacant" until
the date on which the resignation becomes effective . . . . (Emphasis supplied.) Accord: State ex rel. Landis v. Heaton, 450,180 So. 766, 769 (Fla. 1938); and Tappy v. State, 82 So.2d 161,166 (Fla. 1965); see also 26 Fla. Jur. Public Officers s. 63 (1959). An exception to the foregoing rule was found by the court in in re Advisory Opinion to the Governor, 239 So.2d 247 (Fla. 1970), where the incumbent's resignation was made under the Resign-to-Run Law, s. 1(2), Ch. 70-80, Laws of Florida [now s.99.012(2), F.S.]. That statute requires an individual who holds an elective or appointive state, county, or municipal office to resign from that office before he or she may qualify as a candidate for another public office, if the term, or any part thereof, of the office currently held runs "concurrently with the term of office for which he [or she] seeks to qualify." The statute then specifically provides: With regard to elective offices, said resignation shall create a vacancy in said office thereby permitting persons to qualify as candidates for nomination and election to that office in the same manner as if the term of such public officer were otherwise scheduled to expire . . . . Because of this specific statutory provision, creating in effect an artificial end of the term of the office being resigned from, the court held: Under the quoted statute a successor to Judge Dekle will take office simultaneously with the effectiveness of his resignation. Hence, no vacancy occurs to activate the constitutional executive power of appointment. "Vacancy" in the sense used in this statute means the same as the ending of a term. When a term ends the office becomes "vacant" to the extent that it must be filled by election, or, if no one seeks the office by election, then by executive appointment. Here, the statute ends the tenure of the incumbent holder of the office but it also provides for the election of a successor, who succeeds to the office at the precise moment that the resignation of the incumbent takes effect. . . . 239 So.2d at 250 Accord: in re Advisory Opinion to the Governor, 276 So.2d 25, 30 (Fla. 1973), in which the court mentioned in passing: Of course, resignations under Fla. Stat. s. 99.012, F.S.A. (Resign to Run Law) or under similar circumstances do not create a vacancy which activates the duties of the commissions or empower the Governor to make direct appointments. . . . (Emphasis supplied.) The reference to the exception to the general rule created by the Resign-to-Run Law is with regard to the court's earlier holding in in re Advisory Opinion to the Governor, 239 So.2d 247 (Fla. 1970). It is my opinion that the court was merely leaving open the possibility that in the future there might be additional statutory or constitutional authorization for resignations under circumstances similar to the Resign-to-Run Law, whereby a vacancy to be filled by appointment would not arise. There is currently no such additional statutory or constitutional authorization, and it is my opinion that, absent such authorization, an incumbent may not provide in his or her resignation tender that an election is to be held to select his or her successor. This is in accord with the principle discussed supra that the term of office is determined by law, and may not be altered by the commission granted to the officeholder, the governor, or the officeholder himself. Thus, in order for there to be a judicial election in 1974 (for a seat on the Florida Supreme Court, as referred to in the letter quoted in question 1), a vacancy must occur, if by resignation, pursuant to a resignation made and becoming effective prior to the September, 1974, judicial elections. See Art. V, s. 11, State Const., ss. 105.021 and 100.112, F.S. It should be noted that in In re Advisory Opinion to the Governor, 158 So. 441 (Fla. 1934), the court further held that where a resignation to become effective at a later date had been accepted by the governor, but no commission had been granted to a successor appointee, the individual submitting said resignation could withdraw it thereby preventing "the office from becoming vacant to be filled by the granting of a commission by the Governor." [See] 158 So. at 442. The factual circumstances underlying your inquiry do not indicate that the incumbent in question has resigned pursuant to s. 99.012, supra, in order to run for another elective office. Therefore, I am of the opinion that the answer to your first question should be that a vacancy in the judicial office will occur on the effective date of the accepted, unwithdrawn resignation, if in fact and in law such resignation is an "unconditional" resignation to become effective at midnight, January 6, 1975. The pertinent part of the letter of resignation, I hereby unconditionally resign and retire as of midnight on January 6, 1975, so that a vacancy will be created the following day, January 7, 1975, which will be filled by the person who will be elected in the 1974 judicial election (Emphasis supplied.), raises the question as to whether, notwithstanding the use of the word "unconditionally," the italicized portion of the above quotation should be construed as a condition to or contingency of the resignation tender. That is, "but for" the filling of the office by the person legally and validly elected in the 1974 judicial election, the resignation tender would not have been made, or is contingent upon such event. If it is not a condition or a contingency, if the italicized language may be properly regarded as surplusage, my previous conclusion would not be altered. On the other hand, if it may be construed in law and in fact as a condition or a contingency, additional considerations are required. The general rule with regard to conditional resignations is stated in 67 C.J.S. Officers s. 55 b. (1950): A proposal to resign on a specified condition cannot be accepted except on the terms made by it, and, in the absence of a corrupt bargain, it is not unlawful for an officer to attach, as a condition of his resignation, the appointment of a certain other person as his successor. . . . (Citations omitted.) Assuming for the moment that the italicized portion of the resignation tender letter is a condition and that it is accepted, the question is then presented as to whether it has any legal force and effect and whether it lies within the constitutional or statutory prerogative of the supreme executive power to cause to be called and held a valid election to carry out and satisfy the terms of such conditional tender of resignation. The effect of the "condition," if accepted, would be to require the holding of a valid judicial election in the fall of 1974, not otherwise scheduled to be held under the new judicial selection system, in accordance with the provisions of Ch. 105, F.S., to fill that office. However, as stated in 67 C.J.S. Officers s. 52 (1950): Elections to fill vacancies. An election to fill a vacancy in an elective office can be held only by virtue of a constitutional provision or legal enactment, either express or by direct implication, authorizing that particular election; and a law authorizing the electors to elect a person to fill a certain office does not, by implication, authorize them at an intermediate election to choose a person to fill out an unexpired term of the same office. (Citations omitted.) With the sole exception of the Resign-to-Run Law, s. 99.012, F.S., discussed supra, there is no constitutional or statutory authority for the holding of an election to fill a vacancy in a judicial office. The ultimate choice of justices and judges is left to the people through the electoral process pursuant to Art. V, s. 10(a), State Const., authorizing and requiring the election of "[a]ll justices and judges," but Art. V nowhere authorizes or requires the election of an interim justice or judge to fill an intermediate vacancy or an unexpired term. Section 11(a) of Art. V, State Const., specifically provides that each vacancy in judicial office is to be filled by appointment by the governor for a special interim term, to be followed by an election "to fill that judicial office for the term of the office beginning at the end of the appointed term." There being no authorization by, or requirement of, constitutional or statutory law to call and hold a judicial election in the circumstances contemplated by the subject resignation tender letter, any election so held would, in my opinion, be a nullity. State ex rel. Gibbs v. Lunsford,192 So. 485 (Fla. 1939). Thus, if the relevant language of the subject resignation tender letter were to be considered as a condition, it would be of no legal force and effect and, as governor, you would be powerless to take any action to comply with it. If the italicized language in the resignation tender operates to make the prospective resignation in law and in fact a contingent resignation, i.e., the resignation is contingent upon the election of a successor in a valid judicial election to be held in 1974, the same considerations applied above to conditional resignations would apply and govern any such contingent resignations. Resignations contingent upon the occurrence of a specified event have been recognized as valid. See State ex rel. Landis v. Bird,163 So. 248, 270 (Fla. 1935), holding that the resignation of a judicial officer found to be in law and in fact contingent upon receiving appointment to another judicial office was not effective where the appointment received was without legal efficacy and the resigning judge was thereupon continued in the judicial office from which he had resigned until the expiration of the subsistent term of that office. However, the "contingency" contemplated in this instance can not be validly accomplished; thus, both the contingency and the resignation itself would be ineffective. Therefore, I am of the opinion that if the aforecited resignation tender does in law as well as in fact constitute a conditional or contingent resignation, it is of no legal efficacy and is legally ineffective to accomplish the designed purpose thereof. AS TO QUESTION 2: As indicated by the discussion with regard to your first question, it is impossible to categorically determine the nature and legal effect of the language utilized in the subject resignation tender letter, and I lack the authority to finally resolve objective or subjective factual issues. However, if in fact and in law it is an "unconditional" resignation effective as of midnight January 6, 1975, thereby creating a vacancy in the office as of that date, then the governor's duties and obligations with respect to filling said vacancy are as prescribed by Art. V, s. 11(a), State Const.; that is, the governor must appoint one of the persons nominated by the appropriate judicial nominating commission within sixty days after the nominations have been certified to the governor for a special interim term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election. If and when an actual vacancy in the subject judicial office occurs, such vacancy should be filled in the manner and for the special interim term therein prescribed.